A. N. ROGERS v. THE STATE.

No. 12406.   Delivered May 1, 1929.

The opinion states the case.

*Taylor, Muse* and *Taylor* of Wichita Falls, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for agreeing to bribe a witness; punishment, two years in the penitentiary.

When a case is tried which demonstrates beyond question that a wrong has been done, and that the person on trial has been connected with any angle of the transaction,—especially when the hurt of the wrong affects women or children, it affords strong temptation to a jury to inflict punishment deemed meritorious on general principles, but possibly not mete to the charge laid in the indictment or supported by the facts proved.   In the opinion of the writer we have here some such case.

Mack Foster, father of the illegitimate baby of fifteen year old Edith Shira, was indicted for rape of the girl who was under the age of consent.   His case was set for March 28, 1928.   He evidently wanted the girl to not appear against him.   It is possible that his conscience may have stricken him because of the situation of the child whom he had brought into existence.   The record

suggests that he got this appellant to go to Newcastle where the girl lived and bring her and her mother to Olney. Here Foster offered the mother $1800.00 and as much more as the sale of two cars would bring, not to appear against him. This was manifestly wrong. The rape was wrong. Foster said in their conference that he had had no chance himself but wanted the innocent baby to have a chance, and that when the case was over he wanted to give it a home. This was doubtless appealing to the women. He there gave Edith's mother $20.00 expense money with which to come to see him in Breckenridge. Appellant was in the room when all this talk was made, but seems to have offered no advice nor taken any part in what was said. This was about March 15, 1928. Appellant drove Edith and her mother back to their home, and told the mother she had better not take the $20.00 expense money mentioned and she gave it to him to give back to Foster. If Edith or her mother had further communication with Foster or appellant regarding the case, or instructing them what they should do, or offering them any further money, or having any further agreement with them, knowledge of same was withheld from the jury. One Henry Williams lived at Newcastle and seems to have stayed at "The city office." He did not know appellant, but on March 15, 1928, made his acquaintance. Stranger than fiction! Appellant came to him, Williams, on that day and asked him to keep $2000.00 for a while, if he would. Williams seems to have readily agreed. The money was turned over. A written receipt was mutually signed. Same stipulated that if the case against Mack Foster was dismissed on or before April 1, 1928, this $2000.00 was to be delivered to Edith Shira; otherwise, it was to be returned to appellant. The case against Foster was not dismissed. The money was not given to Edith. Whether this even remotely tended to support the proposition of the indictment, viz: that appellant agreed and promised to give Edith $2000.00 to avoid service of a subpoena issued in Foster's case, is doubtful, but it certainly looked wrong. It looked like somebody, probably appellant, was taking advantage of Edith. She could not get the case dismissed by going away, so that the case could not be tried. This would not get it off the docket. She might do her best to aid her seducer, the father of her child, by absenting herself, but no one could dismiss the case but the district judge. The mere absence of a witness at the first term of court after the return of an indictment would be no cause for dismissal. Even so, it looked like a sure thing that the money

thus put in Williams' hands would revert to appellant after April first. This had every aspect of a further wrong upon Edith.

She and her mother left Newcastle about March 15th and went to Mineral Wells. They came back to Olney March 27th, and went from there to Bowie, and from there to Oklahoma. Somewhere, on March 30th she married this appellant, not her betrayer, not the father of her child, but this friend of Foster. All of this we can fully understand would strongly tend to put in the breast of a jury composed of ordinary Texas men an almost irresistible impulse to punish somebody, and since the accused was mixed up in the affair, and was the only one they could lay hands on,—why not punish the accused. They did.

To make out the case as plead in the indictment, however, the State must needs prove the issuance of a subpoena, a legal summons, for Edith Shira in the case against Mack Foster. We fear they have not made this proof. From the record we learn that on March 10, 1928, a subpoena was issued in Mack Foster's case returnable March 28th for Edith Shira, "Oklahoma, Okla." This subpoena was addressed to the sheriff or any constable in Young county, Texas. It seems from the return thereon (which is not dated) to have not been served on Edith Shira and her mother, Mrs. Johnson, "said to be in Oklahoma." No showing of diligent search in the return would likely be accounted for by the fact that the subpoena itself located the witness Edith Shira in Oklahoma. A subpoena for a witness issued to a Texas county which set out the residence of the witness as in a foreign state, would hardly be deemed a legal summons.

The conviction was for contracting, agreeing and promising to pay Edith Shira $2,000.00, to avoid service of a subpoena, which had been legally issued for her to appear and testify in Mack Foster's case, by secreting herself. An offer of money to a witness who had been served with process, to induce the witness not to appear against the accused, might be construed as an offer of money to disobey process, but when process had not been served, it would seem necessary in some way to show that the matter of avoiding service thereof or knowledge that such process had been issued should have entered into the transaction, and be referred to or discussed by some of the parties thereto, or some facts have been testified to which gave rise to such necessary inference. The most rigid scrutiny of the record in this case fails to show any sort of reference by Mack Foster or appellant or Edith Shira or her mother, to the fact that

any process had been or would be issued in this case for Edith Shira. While the subpoena above referred to is dated March 10th, it apparently did not get into the hands of the sheriff until March 15th. While the two women affirm that Foster wanted them not to appear against him, this was as far as any of them would go. Both of them testified that appellant made no suggestion as to avoiding service of process, and that no one else said anything about that. We have no doubt but that this record is ample to show that a wrong was done, but believe same does not make out the case as pleaded in the indictment. In the early case of Hughes v. State, 43 Tex. 518, it was held that an indictment charging that the accused, knowing one Brown to be a witness, offered him five dollars and property of the value of ten dollars to secrete himself and not be a witness before the grand jury, nor to appear at the district court at said trial, such allegation was not sufficient to amount in law to a charge of an offer to bribe a witness to avoid service of process by secreting himself. This seems to be very much like the case before us on its facts. Giving the strongest effect to the testimony of Edith Shira and her mother, and other facts in evidence, same would seem to go no further than to show that they were offered money to absent themselves from the court, without reference to any process, or knowledge of any process, or any idea of avoiding service of process.

The judgment will be reversed and the cause remanded.

*Affirmed.*

MORROW, P. J., not sitting.